```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Yvonne M. Watson, et al.,          :

    Plaintiffs,                :

        v.                     :     Case No. 2:07-cv-0777

Citi Corp.,                        :     MAGISTRATE JUDGE KEMP
et al.,
                                                :

    Defendants.

                        OPINION AND ORDER

    Plaintiffs Yvonne and Bradley Watson filed this action for damages and injunctive relief against three defendants, including Citibank (South Dakota), N.A., asserting claims for breach of contract, violations of the Fair Credit Reporting Act, and willfully filing a fraudulent information return in contravention of 26 U.S.C. §7434.  Citibank has moved for summary judgment pursuant to Fed. R. Civ. P. 56(b).  The Watsons filed a response in opposition to the motion, and Citibank replied.  For the following reasons, Citibank's motion for summary judgment (#32) will be granted in part and denied in part.

                                                    I.

    Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.  <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the

light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317(1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

II.

Yvonne Watson opened a Mastercard credit card account with Citibank in 2000.  Although Bradley Watson was an authorized user of the Mastercard, he was not responsible for paying the account.  At some point, Ms. Watson became delinquent on her payments, and Citibank closed the account.  In 2003, Citibank authorized defendant Associated Recovery Systems to attempt to collect the outstanding balance on the account.  At that time, the amount of the debt was, according to Citibank's records, $12,224.46.  Under the collection referral agreement between ARS and Citibank, ARS had authority to accept payment for less than the total amount in satisfaction of Citibank's claim.

On February 23, 2004, Ms. Watson received a letter from ARS

offering to settle the account.  The letter indicated that the balance then owing was $13,581.39.  ARS stated that its client, Citibank, had agreed to accept a payment of $9,506.97 as settlement in full.  This amount represented a 30% discount.  ARS also stated that once payment of the $9,506.97 had cleared, Citibank would inform the three national credit bureaus - TransUnion, Equifax and Experian - that their credit reports should be updated to reflect a settlement in full and a $0 balance.  The letter from ARS noted that Citibank would be required to file Form 1099-C with the IRS for any debt forgiveness of $600.00 or more.

Ms. Watson did not think she owed $13,581.39, but rather an amount approximating $10,000.00.  On March 11, 2004, she mailed a letter to ARS, along with a check for $7,000.00.  In the letter, she referred to ARS's settlement offer, explained what she believed she owed on the account, and proposed a counter-offer of $7,000.00.  Ms. Watson informed ARS that if it cashed the $7,000.00 check, it would have accepted her counter-offer and would have released her from all obligations on the account.  She then added, "I would expect that you would promptly remove all negative information from all credit agencies with your acceptance of this offer."  Ms. Watson also told ARS that she and her husband had consulted an attorney regarding bankruptcy, but in consideration of ARS's acceptance of her counter-offer, she would refrain from filing bankruptcy for 90 days.  ARS cashed the check, and the Watsons did refrain from filing bankruptcy for more than 90 days after Ms. Watson's check had cleared.

On March 15, 2004, Citibank posted a credit of $7,000.00 to Ms. Watson's account.  As of April 8, 2004, the account, however, still showed a balance of $7,313.03.  On April 24, 2004, Citibank recalled the account from ARS with an outstanding balance of $7,966.69.

The parties dispute when Citibank became aware of the settlement. The Watsons maintain that ARS provided Citibank with weekly updates regarding its collection efforts with respect to the Mastercard account. Consequently, they claim that Citibank knew of and approved the settlement no later than March 15, 2004. To support their position, the Watsons rely on certain notes and answers to interrogatories and requests for admissions provided by ARS which are attached as exhibits to their memorandum contra. Citibank challenges the admissibility of these discovery materials on the grounds that the Watsons have failed to authenticate, or to provide a proper foundation for, these exhibits, and that they constitute inadmissible hearsay. In addition to the discovery responses from ARS, the Watsons rely on Ms. Watson's statement that she telephoned Citibank on April 16, 2004, to inform Citibank of the settlement that she had entered into with ARS. Citibank, however, claims that its records do not reflect any direct communications from Ms. Watson concerning the account until July/August 2005. Similarly, Citibank represents that it was not advised by ARS of the settlement until August 31, 2005.

On September 2, 2005, Citibank wrote off the remaining balance on Ms. Watson's account and soon thereafter reported to Experian that the amount owed on the account was zero. Citibank continued, however, to report the account as a charged off, delinquent account and did not request the removal of previously reported negative information by any of the credit reporting agencies. This negative information included statements that Citibank had written off a total of $11,957.00 and that the high balance on the account was $14,139.00, both of which the Watsons dispute. In January 2006, Citibank issued a Form 1099-C imputing income to Ms. Watson in 2005 of $6,766.36 resulting from the cancellation of debt. This figure reflected the amount of

principal owed on the account according to Citibank's records. The Watsons believe that an individual at Citibank caused the Form 1099-C to be issued in retaliation for their threat to sue Citibank for breach of contract, a claim which Citibank denies.

On April 15, 2005, Citibank received from Experian the first of four Automated Consumer Dispute Verifications initiated by Ms. Watson. Experian listed Ms. Watson's dispute as "Dispute Code 1" which corresponds to "Disputes present/previous Account Status/ Payment History Profile/Payment Rate." The ACDV further described the dispute in the box designated for FCRA Relevant Information with the notation "MATTER SETTLED–CAN PROVIDE DOCUMENTATION/PAID (A2)Bal:0 ACT. DT:04/14/05." After investigating the matter, Citibank responded to Experian on April 28, 2005, that as of that date the account had been charged off for non-payment with a balance owing of $7,966.00. Citibank maintains that because its records at that time did not reflect that the account had been settled or paid off, it would have had no reason to respond to the ACDV by deleting the negative information or reporting the balance on the account as zero.

On June 27, 2005, Citibank received a second ACDV from Experian initiated by Ms. Watson. Experian related Ms. Watson's dispute as "Consumer states inaccurate information. Provide or confirm complete ID and account information." The ACDV further expounded: "ACCOUNT SETTLED–TERMS OF SETTLEMENT INCLUDE REMOVAL FROM CREDIT REPORT. I CAN PROVIDE LEGAL DOCUMENTATION." Citibank confirmed the account data and on June 28, 2005, reiterated that the account had been charged off with a balance owing of $7,966.00. This response was based again on the lack of information in Citibank's records concerning a settlement or payment in full.

Citibank received a third ACDV from Experian on August 4, 2005. This ACDV listed the same code for Ms. Watson's dispute as

the first ACDV and indicated her belief that the account balance was zero. Citibank points out that, unlike the first two ACDVs, this one does not specify why the account status was disputed and makes no mention of any purported settlement.  On August 9, 2005, Citibank, nevertheless, responded to Experian's request by confirming that the account had been charged off with a balance owing of $7,966.00.  Citibank states that its response once again was based on the lack of any information in its files to substantiate a settlement or payment in full, and thus there was no basis to report the balance on the account as zero.

    Experian sent the fourth and final ACDV to Citibank on October 25, 2005.  The description of Ms. Watson's dispute in this ACDV was "Consumer states inaccurate information. Provide or confirm complete ID and account information."  No other information or explanation was provided.  By this time, Citibank's records reflected that the remaining balance owing on the account ($7,966.00) had been written off.  Accordingly, Citibank responded to Experian on October 26, 2005, by changing the balance owed on the account to $0.  Citibank, however, continued to report the account as a delinquent, charged-off account since its records did not reflect any agreement to delete all negative information on the account.  Ms. Watson maintains that she told Citibank in April 2004 that it had a duty under the settlement agreement to remove the negative reporting.

    On July 15, 2005, Ms. Watson accepted a human resources position with the Defense Logistics Agency Training Center in Columbus.  This employment was contingent upon the approval of a security clearance for Ms. Watson.  Ms. Watson did not receive approval of her security clearance until July 31, 2007.  As a result, her employment at the DLA Training Center was delayed for more than two years.  This delay was allegedly due to her negative credit history.  Ms. Watson thus blames Citibank and the

other defendants for a substantial loss of income due to their failure to delete the negative reports associated with her Mastercard account. She also claims that this negative information caused her to lose a business line-of-credit in the amount of $10,000.00.

As the result of the Form 1099-C filed by Citibank and the Watsons' failure to report the amount listed on the form as income, the IRS audited their 2005 federal tax return. The Watsons allegedly spent hundreds of hours responding to the IRS's requests and were later assessed additional taxes based on this imputed income, along with interest and penalties. The Watsons believe that the Form 1099-C was fraudulent because, even apart from Citibank's alleged retaliatory motives, it reflected an incorrect date and was filed both in the wrong tax year and for the wrong amount.

### III.

Citibank seeks summary judgment against Bradley Watson on the plaintiffs' breach of contract claim on the ground that Mr. Watson was not a responsible party on the Mastercard account, but was merely an authorized user. Accordingly, Citibank contends that it did not enter into a contract with Mr. Watson and that, without a contract, there can be no liability for breach of contract. Citibank's position is supported by this Court's determination in an order entered earlier in this case that Mr. Watson was neither a party to the alleged contract with ARS nor a third-party beneficiary of that contract, and thus could not maintain a breach of contact action against ARS. See Order Granting in Part and Denying in Part ARS National Services, Inc.'s Motion to Dismiss (#26) p.4.

In their memorandum contra, the Watsons concede that Mr. Watson did not have a contract with Citibank and deny that it has ever been their contention that he did. They further state that

Mr. Watson's sole claim against Citibank arises from Citibank's issuance of the Form 1099-C.

In light of the Watsons' clarification, this portion of Citibank's motion for summary judgment is moot. Accordingly, this Court will consider Citibank's arguments in favor of summary judgment on the breach of contract and FCRA claims only insofar as these arguments relate to plaintiff Yvonne Watson.

IV.

Citibank argues that Ms. Watson cannot establish the existence of any contract under which Citibank was obligated to remove negative credit information concerning the Mastercard account. Citibank contends that the only contract it had with Ms. Watson was the agreement governing the Mastercard account, and that this agreement expressly permitted Citibank to accept payments, such as the $7,000.00 check, that reflected "paid in full" or other restrictive endorsements, without losing any of its rights under the card agreement. Citibank also maintains that it was expressly authorized under the card agreement to report to the various credit bureaus, including Equifax, Ms. Watson's failure to make minimum payments on time. Citibank claims that Ms. Watson became bound under applicable state law by the terms of the card agreement the first time she used the Mastercard. See S.D. Codified laws §54-11-9. Citibank denies that it assented to the provisions of any contract implied by Ms. Watson's 2004 correspondence with ARS that would have overridden the card agreement, particularly any obligation to delete negative credit reporting.

Ms. Watson bases her breach of contract claim not on the card agreement, but on an alleged accord and satisfaction. She avers that Citibank made an offer, through its collection agent ARS, to report the account as settled in full with a zero balance if she paid the sum of $9,506.97. This amount represented

approximately 70% of what Citibank claimed was then due on the account. Ms. Watson says she responded to the offer by disputing the amount Citibank claimed was owing on the account and offering to pay ARS $7,000.00 in full settlement. She further states that she enclosed a check for $7,000.00 made payable to ARS with the express understanding that cashing the check would constitute acceptance of her counter-offer. Ms. Watson argues that the ARS's cashing of this check and the failure of either ARS or Citibank to take any action indicating they were not in agreement with the terms of the counter-offer had the legal effect of satisfying her debt to Citibank and extinguishing any remaining rights or obligations under the card agreement.

An accord and satisfaction is a common-law doctrine which recognizes that a creditor and a debtor may agree to settle a claim by a performance different from that which was due according to the original agreement. If the substitute agreement is consummated, it supersedes the original contract. AFC Interiors v. DiCello, 544 N.E.2d 869, 870 (Ohio 1989). The "accord" consists of the offer by the debtor and the acceptance of that offer by the creditor, while the "satisfaction" is the execution of the accord. Ballinger v. Fu, 215 F.3d 1325 (table), 2000 WL 658061 at *1 (6th Cir. May 9, 2000). The four essential elements under Ohio law for an accord and satisfaction are proper subject matter, competent parties, mutual assent, and consideration. State, ex rel. Shady Acres Nursing Home, Inc. v. Rhodes, 455 N.E.2d 489, 490 (Ohio 1983). There does not appear to be any dispute that the Mastercard account could be the proper subject matter of an accord and satisfaction or that Citibank and Ms. Watson were competent parties. The Court, therefore, will first turn to the question of mutual assent.

Ms. Watson has produced sufficient evidence to support her contention that ARS was acting as Citibank's agent when it sent

the settlement offer to Ms. Watson and when it cashed her $7,000.00 check. The terms of that settlement offer included the promise that upon their receipt of cleared funds in the amount of $9,506.97 both ARS and Citibank would consider the account settled in full and would update their reporting to the national credit bureaus to reflect the settlement in full and a zero balance on the account. The evidence shows that Ms. Watson made a counter-proposal to ARS to pay $7,000.00 in full settlement of the account and enclosed a check for that amount with her response. Her letter clearly stated that "[c]ashing of this check constitutes your acceptance of my offer and releases me from all obligations on this debt for all previous, current, and future assignees." This provision was consistent with the terms of ARS's and Citibank's original offer, and hence ARS's cashing of the check constitutes some evidence (although not conclusive evidence) of its and Citibank's assent to receipt of the lower amount in full satisfaction of the account.

Where the amount of the claim is unliquidated or disputed, and an accord is reached whereby the creditor accepts payment of less than what it believes is owed, the consideration for the settlement lies in the mutual concessions of the parties. <u>Yin v. Amino Products Co.</u>, 46 N.E.2d 610, 613 (Ohio 1943). On the other hand, if the claim is liquidated and undisputed, some additional consideration will be required to establish an accord and satisfaction. <u>Williams Furniture Corp. v. Arcade Furniture Store</u>, 82 N.E.2d 926, 928 (Ohio Ct. App. 1948).

Citibank contends that the balance owing on the account prior to the alleged accord and satisfaction was, in fact, liquidated, and that any dispute of that amount by Ms. Watson could not have been made in good faith. See <u>City of Indianapolis v. Domhoff & Joyce Co.</u>, 36 N.E.2d 153, 159 (Ohio Ct. App. 1941) (where dispute is asserted as consideration for accord and

-10-

satisfaction, assertion must be made in good faith).  The evidence of a bona fide dispute by Ms. Watson is noticeably thin.  In her March 11, 2004 letter to ARS Ms. Watson claimed to have received a very recent notice that the amount owed on the account was $10,000.00, not $13,591.39.  She has not, however, produced this notice.  Furthermore, both Ms. Watson and her husband testified in their depositions that any bills not related to Ms. Watson's business went directly to Bradley Watson unopened.  Therefore, there is some doubt as to whether Ms. Watson would have even seen such a notice.  Lastly, there does not appear to be any corroborating testimony from Mr. Watson that he received the purported notice that the balance on the account was $10,000.00.

The Court need not decide whether there is a genuine issue of fact concerning the lack of a bona fide dispute, however, because Ms. Watson has put forward evidence that the accord and satisfaction was supported by additional consideration.  This additional consideration arises from Ms. Watson's promise that if ARS accepted her counter-offer by cashing the $7,000.00 check, she and her husband would refrain from filing bankruptcy for at least 90 days.  Such a promise, if fulfilled, would benefit ARS and Citibank since a bankruptcy filed within 90 days might subsequently result in an avoidance of the payment by Ms. Watson's bankruptcy trustee. <u>See</u> 11 U.S.C. §547(b).  Courts have generally held that a debtor's forbearance from exercising her right to file bankruptcy is sufficient consideration for an accord and satisfaction when the forbearance is made in connection with her payment of part of the debt. <u>See</u> Annotation, <u>Debtor's Waiver of, or Refraining from Exercising, Right to Resort to Bankruptcy, or His Insolvency, as Consideration for Release of All or Part of Liability</u>, 108 A.L.R. 656 (1937); <u>Miller v. Harrah</u>, No. 5-80-11, 1980 WL 351553 at *3 (Ohio App. 6

Dist. Oct. 10, 1980)(citing Restatement (Second) of Contracts §76A illus. 6); Harper v. Graham, 20 Ohio 105, 118 (1851)(creditor was legally bound to settlement for less than amount of judgment under circumstances which included fact that debtor was insolvent).  It is also noteworthy that South Dakota, whose law governed the terms of the original Mastercard agreement, has by statute eliminated altogether from the elements of an accord and satisfaction the need for new consideration where the amount due is undisputed. See Rang v. Hartford Variable Annuity Life Ins. Co., 908 F.2d 380, 382-83 (8th Cir. 1990).

Once an accord and satisfaction have been established, the substituted agreement is treated the same as any other contract. See 1 Am. Jur. 2d  Accord and Satisfaction §4 (2008); Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C., 782 N.E.2d 1225, 1239 (Ohio Ct. App. 2007)(per Painter, P.J., with two judges concurring in judgment only).  Therefore, despite Citibank's insistence that the doctrine of accord and satisfaction constitutes merely an affirmative defense, a debtor may be entitled to bring a separate action for breach of contract of the settlement. See Drive-N-Shoppe, Inc. v. Pavlik, 514 N.E.2d 917, 919 (Ohio Ct. App. 1986).

The parties agree that to prevail on a breach of contract action under Ohio law, a plaintiff must show (1) that a contract existed between the plaintiff and the defendant,(2) that the plaintiff fulfilled her obligations under the contract,(3) that the defendant failed to fulfill its obligations under the contract, and (4) that the plaintiff sustained damages as the result of the defendant's failure to fulfill its obligations under the contract. See Lawrence v. Lorain County Community College, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998).  South Dakota law is in accord. See Guthmiller v. DeLoitte & Touche, LLP, 699 N.W.2d 493, 498 (S.D. 2005)(elements of breach of contract claim

include an enforceable promise, breach of that promise, and resulting damages).

Ms. Watson has submitted evidence sufficient to create a genuine factual issue as to the first two elements, that a contract existed between her and Citibank in the form of an accord and satisfaction and that she fulfilled her obligations under this contract by making a payment of $7,000.00 in full satisfaction of her debt and by refraining from filing bankruptcy for 90 days after such payment.  The Court, therefore, will turn to the remaining two elements of a breach of contract claim.

Citibank argues that it cannot be liable for breach of contract because it never promised to delete its negative credit reporting on the Mastercard account.  This argument focuses entirely on Ms. Watson's claim that the accord and satisfaction created such a duty on Citibank's part.  Ms. Watson bases this portion of her breach of contract claim on her statement in the March 11, 2004 letter to ARS that "[she] would expect that [ARS] would remove all negative information from all credit agencies with [its] acceptance of [her] offer."  The Court agrees with Citibank that Ms. Watson's inclusion of this sentence in her letter was not part of the parties' bargain.  The original offer transmitted by ARS did not contain any similar provision, and there is no evidence that ARS understood that Ms. Watson's mere expectation that the negative credit information would be removed was anything more than just that.  To the extent ARS took notice of Ms. Watson's expectation, it may simply have believed she was referring to its and Citibank's obligation to report the account as settled in full with a zero balance once her payment cleared.  Moreover, there is no evidence, assuming that ARS agreed to the removal of the negative information, that it had the authority to bind Citibank to this obligation or that Ms. Watson in good faith believed that ARS possessed such authority.  Accordingly, Ms.

-13-

Watson's claim that Citibank breached the accord and satisfaction by failing to remove all negative information concerning the Mastercard account from her credit report fails as a matter of law.

This determination, however, does not entirely dispose of Ms. Watson's breach of contract claim against Citibank. Her complaint can reasonably be construed to allege that Citibank breached the accord and satisfaction by failing to report to Experian that the account was settled in full and had a balance of zero. See Complaint ¶12 ("Defendant CitiCorp [has] continued to report...to the credit reporting agencies...that there remains a balance due and owing..."). This obligation, unlike the purported obligation to remove all negative credit information on the account, was part of the original offer from ARS. Therefore, it can be argued that this requirement was an essential term of the accord and satisfaction. There is some evidence that Citibank, through its authorized agent, agreed to this particular term. If so, Citibank was bound to report the account to Experian as settled in full with a zero balance once it became aware of the accord and satisfaction. Although Citibank claims it did not receive notice of the settlement until August 2005 and that it then promptly updated the account to reflect a zero balance, Ms. Watson has come forward with enough evidence that Citibank knew of the settlement much earlier to create a genuine issue of material fact as to whether Citibank breached the settlement agreement.

It remains unclear what damages Ms. Watson suffered as the result of Citibank's alleged breach. The record suggests that most of her damages resulted from the negative information on her credit report which included her failure to make minimum payments on her Mastercard account in a timely manner, as well as the fact that Citibank charged off a substantial portion of the balance

owed on the account.  By Ms. Watson's own estimate, Citibank wrote off 30% of the balance owed.  Because the accord and satisfaction did not obligate Citibank not to report such information or to delete any negative information that it might already have reported, Ms. Watson may not as a matter of law recover breach of contract damages for such negative credit reporting.

As a general rule, Ms. Watson bears the burden of proving her damages and that such damages were proximately caused by Citibank's breach.  Had Citibank met its initial burden under the summary judgment standard, Ms. Watson would have been required to produce evidence of resulting damages sufficient to establish the existence of this element.  By focusing exclusively on the question of whether it was bound to delete all negative credit reporting concerning the Mastercard account, Citibank omitted any argument it might have raised regarding the issue of whether Ms. Watson suffered any damages resulting from its failure to report the account as settled in full with a zero balance for more than a year after Ms. Watson's $7,000.00 check had cleared.  On the present record, then, the Court cannot say that no genuine issue of material fact exists with respect to the damages element.  At trial, however, Ms. Watson will bear the burden of establishing such damages during her case-in-chief, and should she fail to do so, judgment as a matter of law will be entered in favor of Citibank on her breach of contract claim.

V.

The complaint also alleges that Citibank violated the Fair Credit Reporting Act by continuing to report "incorrect amounts charged off and reporting that there remains a balance due and owing" under the Mastercard account. See Complaint ¶12. Although the complaint does not identify which provision of the FCRA Ms. Watson's claim arises under, her memorandum contra clarifies that

she is maintaining a claim under 15 U.S.C. §1681s-2(b).  This section imposes certain duties on entities furnishing information to a consumer reporting agency.  Upon receiving notice of a dispute with respect to the completeness or accuracy of such information, the furnisher of that information is required to conduct an investigation regarding the information disputed, review all information provided by the consumer reporting agency, and report the results of the investigation to the consumer reporting agency.  If the investigation reveals the information to be incomplete or inaccurate, the furnisher must report the results of its investigation to all other consumer reporting agencies to which the entity furnished the information.  In addition, if an item of disputed information cannot be verified, the entity must promptly modify or delete the item of information and permanently block the reporting of that item.

    Citibank apparently concedes for the purposes of its motion that a private right of action exists for a consumer under §1681s-2(b).  Assuming that a private right of action does exist, Citibank admits that, as a furnisher of credit information, it received four separate notices of dispute (the "ACDVs") concerning the Mastercard account from Experian, a consumer reporting agency, that it conducted an investigation into each of these notices of dispute, and that it provided the results of those investigations to Experian.  Citibank maintains, however, that only the last two ACDVs are properly at issue here.

    Citibank responded to both the first and second ACDVs more than two years prior to the commencement of this lawsuit.  15 U.S.C. §1681p provides that an action to enforce any liability created by the FCRA must be brought within two years after the date the plaintiff discovered the violation or within five years after the date on which the violation occurred, whichever is earlier.  Citibank argues that because Ms. Watson was

-16-

indisputably aware of the alleged violations before August 8, 2005, her FCRA claim as it relates to the first two ACDVs is barred by the statute of limitation. In her memorandum contra, Ms. Watson does not seriously contend otherwise. The Court concludes that there are no genuine issues of material fact regarding the ACDVs received by Citibank on April 15, 2005, and June 27, 2005, respectively, and that any claim under the FCRA related to these notices of dispute is barred as a matter of law.

Citibank maintains that it is not liable with respect to the third ACDV because it allegedly conducted a reasonable investigation into Ms. Watson's apparent contention that her account balance was zero. While conceding that whether an investigation is reasonable is normally a question of fact, it contends that "summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." See Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005). In this case, Citibank maintains that because its records did not at that time reflect the settlement of the account in full and because the notice of dispute did not specify why Ms. Watson believed the account balance to be zero, its investigation and subsequent response were reasonable as a matter of law.

In response, Ms. Watson argues that the first two ACDVs should have alerted Citibank as to the reasons she believed the account balance to be zero, namely that the matter had been settled, that she could provide documentation concerning this settlement, and that the terms of the settlement included removal from the credit report. This information, together with Ms. Watson's sworn statement that she had provided the details of the settlement to Citibank by telephone prior to Citibank's receipt of the notice of dispute and the evidence of written communications between ARS and Citibank regarding the settlement, is sufficient to establish the existence of an issue of material

fact regarding the reasonableness of Citibank's investigation into the ACDV it received on August 4, 2005.

By the time Citibank received the fourth ACDV on October 25, 2005, it had confirmed the settlement of the Mastercard account with ARS.  Citibank responded to this notice of dispute by updating the information it furnished to Experian to reflect an account balance of zero.  Although Ms. Watson complains that Citibank still did not remove the other negative information from her credit report, the Court has already determined that Citibank was not under any contractual duty to do so.  Accordingly, there is no genuine issue of material fact with respect to the reasonableness of Citibank's investigation into the fourth and final ACDV, and any FCRA claim resulting from such investigation fails as a matter of law.

Citibank further contends that even if it can be said to have violated the FCRA, its conduct was not willful under §1681n. Therefore, in its view, it cannot be liable for punitive damages. Ms. Watson opposes summary judgment on this issue, arguing that because Citibank allegedly knew of the settlement in 2004, its conscious disregard of such settlement when investigating the various ACDVs constitutes evidence of willfulness.

The United States Supreme Court recently addressed when a defendant's conduct is willful such that a plaintiff may recover punitive and statutory damages under the FCRA.  See Safeco Ins. Co. v. Burr, 127 S.Ct. 2201 (2007).  The Court held that willfullness is established where the defendant knowingly violated the plaintiff's FCRA rights or where the defendant acted with reckless disregard for those rights. Id. at 2208.  The Court defined recklessness under an objective standard as "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 2215 (internal quotation marks and citation omitted).  Accordingly, "a company

-18-

subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id.

Whether conduct is willful under the FCRA is generally a question of fact for which summary judgment is not appropriate. Holmes v. Telecheck Int'l, Inc., 556 F.Supp.2d 819, 847 (M.D. Tenn. 2008). Citibank has not shown that the result should be different here. Thus, summary judgment will not be granted on the issue of willfulness.

VI.

Lastly, the Watsons allege that Citibank filed a fraudulent information return for which it can be held liable under 26 U.S.C. §7434. The term "information return" is defined under this statute as any statement described in section 6724(d)(1)(A). The specific information return that is the subject of the Watsons' claim is the Form 1099-C issued by Citibank in January 2006 for the preceding tax year.

Citibank argues that because 1099-C forms for the cancellation of indebtedness are not listed in §6724(d)(1)(A), it cannot be liable under §7434 even if its filing of the form is deemed to be fraudulent. Based on the plain language of the statute, Citibank's position is correct. Although a Form 1099-C may be an information return for other purposes of the federal tax code, Congress, for reasons that are not apparent from the legislative history of this statute, did not include this particular form as an information return for purposes of §7434. Cf. Mikulski v. Centerior Energy Corp., 501 F.3d 555, 563 (6th Cir. 2007)(describing IRS form 1099-DIV as an example of an information return for purposes of §7434). Consequently, while the parties dispute Citibank's motivation in filing the Form

1099-C, this issue is not material to the resolution of the Watsons' claim.  The claim simply fails as a matter of law.

## VII.

Based on the foregoing reasons, Citibank's motion for summary judgment (#32) is granted in part and denied in part consistent with this Opinion and Order.  The Watsons' claim arising under 26 U.S.C. §7434 is hereby dismissed.  Because this claim was the only claim asserted by Bradley Watson, he shall be dropped as a plaintiff pursuant to Fed. R. Civ. P. 21.  Yvonne Watson's breach of contract and FCRA claims, to the extent that such claims have survived Citibank's summary judgment motion, will be tried to the Court.


/s/ Terence P. Kemp
United States Magistrate Judge